Filed 11/4/20  P. v. Brown CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>GREGORY BROWN,<br><br>    Defendant and Appellant. | A157170<br><br>(City & County of San Francisco Super. Ct. No. SCN159271) |

Gregory Brown is serving a sentence of 56 years to life in prison as a result of his 1995 convictions for conspiracy to commit murder and attempted murder.  In 2019, Brown filed a petition for resentencing under Penal Code section 1170.95 (section 1170.95; subsequent statutory references are to this code).  The trial court denied Brown's petition, finding he was ineligible for relief.  We affirm.

### BACKGROUND

#### I.  The 1995 Convictions

The facts underlying Brown's 1995 convictions are summarized in *People v. Brown, et al.* (Jan. 28, 1998, A072126) [nonpub. opn.] (*Brown I*).[1] Brown and two other individuals were tried on charges they conspired and

---

[1]  This court has granted Brown's request to take judicial notice of the appellate record in *Brown I*.

attempted to murder Robin Williams, an ostensible long-time friend of Brown's. Brown's codefendants were his apartment mate, Wanda Fain, and Fain's close friend, Joseph Diggs.

Trial evidence showed that, on an early morning in January 1995, Brown was arrested at his apartment following a police search and seizure of drugs and a weapon. (*Brown I*, at p. 2.) Williams, who frequently visited Brown at his apartment, was present when Brown was arrested. She gave police a statement confirming that she had seen Brown with the gun and drugs. Several days later, Williams was visiting a neighbor when Brown and Fain showed up there. (*Brown I*, at p. 3.) Brown waited outside while Fain came into the house, handed Williams an envelope and told her Brown wanted to talk. The envelope contained an explicit picture of Williams and a threatening note. Williams was too afraid to talk to Brown that day, but about a week and a half later, they had a conversation at Brown's apartment. Brown told Williams that she should " 'stay out of sight' " and he would take care of her as long as she did not testify against him. (*Ibid*.) After this conversation, Williams felt safe and resumed visiting Brown.

On February 7, 1995, which was three days before Brown's preliminary hearing, Williams went to Brown's apartment in the afternoon. (*Brown I*, at p. 3.) Brown was out but Fain and Diggs were there, and Williams consumed " 'a lot' " of cocaine, which Fain supplied. Williams left for a while and when she returned, Brown and Fain were having a private conversation. So Williams left again, returning about five minutes later. Then Fain asked if Williams wanted to go to a house where people engaged in prostitution. Williams agreed to go because she wanted more cocaine. (*Ibid*.) Williams, Fain and Diggs left the apartment at around 7:30 p.m., traveling by bus and on foot. At one point, they walked down Jerrold Street, the women talking

2

and laughing together while Diggs walked behind them.  (*Id.* at p. 4.)  At approximately 8:30 p.m. that evening, Williams was found lying unconscious on Jerrold Street.  She had been shot in the back of the head with a semi-automatic pistol.  Williams survived but did not remember being shot.  She told police that the last people she remembered being with were Fain and Diggs and she suspected Brown may have been involved.  (*Ibid.*)

The jury returned verdicts convicting Brown, Fain and Diggs of conspiracy to commit first degree murder.  (§§ 182 & 187.)  (*Brown I*, at p. 1.)  All three defendants were also convicted of attempted premeditated murder.  (§§ 187 & 189/664.)[2]  As to Brown, the jury found true an allegation that one of the principals was armed with a firearm during the commission of these crimes.  (§ 12022.)  In a separate proceeding, the court found Brown suffered a prior serious felony conviction, which also constituted a strike.  (§ 667.)

## II.  Senate Bill 1437

In 2019, the California Legislature modified the law relating to accomplice liability for murder.  "Senate Bill 1437, which became effective January 1, 2019, was enacted based on the Legislature's express finding that '[i]t is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'  (Stats. 2018, ch. 1015, § 1.)  It did so by amending section 188, which defines malice aforethought, and section 189, which addresses felony-murder liability.

---

[2]  Fain and Diggs were also convicted of assault with a firearm (§ 245) and Diggs incurred an additional conviction for possession of a firearm by a felon (§ 12021).

(Stats. 2018, ch. 1015, §§ 2, 3.)" (*People v. Alaybue* (2020) 51 Cal.App.5th 207, 212–213 (*Alaybue*).)

Because the felony-murder doctrine is not relevant to this appeal, we focus our discussion on the amendment to the definition of malice aforethought. Murder is defined in section 187 as "the unlawful killing of a human being . . . with malice aforethought." Malice is defined in section 188, which states in part: "(a) For purposes of Section 187, malice may be express or implied. [¶] (1) Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature. [¶] (2) Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

Senate Bill 1437 added a new provision to section 188, subdivision (a)(3) (section 188(a)(3)). This provision states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." When the Legislature enacted section 188(a)(3), it "stated in the uncodified statutory findings and declarations that it intended that '[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea.' (Stats. 2018, ch. 1015, § 1.)" (*Alaybue, supra*, 51 Cal.App.5th at p. 213.)

Senate Bill 1437 also added section 1170.95, the provision Brown seeks to invoke in the present case. (See *Alaybue, supra,* 51 Cal.App.5th at p. 213.) Section 1170.95 provides, in part:

"A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that

4

sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a).)

Under this resentencing scheme, if the petitioner is found eligible for relief, his or her conviction is vacated and the petitioner is resentenced "on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence."  (§ 1170.95, subd. (d)(1).)  If "murder was charged generically, and the target offense was not charged," then the petitioner's murder conviction must be "redesignated as the target offense or underlying felony for resentencing purposes."  (§ 1170.95, subd. (e).)

## III.  Brown's Section 1170.95 Petition

On February 26, 2019, Brown filed a petition under section 1170.95 without the assistance of counsel, which was captioned as a petition to vacate his "MURDER" conviction.  In the petition itself, Brown acknowledged that he was not convicted of murder, but of conspiracy to commit first degree murder and attempted murder.  Brown claimed his conspiracy conviction had to be vacated under section 1170.95 because (1) he was not an active participant in the shooting of Williams and therefore (2) under the current

5

law, he could not be convicted based on a theory of felony murder or the natural-and-probable consequences doctrine.

On March 6, 2019, the People filed an "Initial Response" to Brown's petition. The People argued that Brown was not entitled to relief under section 1170.95 because he was not convicted of murder and that section 1170.95 does not apply to Brown's convictions for conspiracy to murder and attempted murder.

On March 8, 2019, the trial court held a hearing to determine whether Brown's petition stated a prima facie case for relief under section 1170.95. At the hearing, Brown was represented by appointed counsel, both parties submitted the matter without presenting an oral argument, and the court stated that it had considered all papers filed by both sides. The court then found that section 1170.95 does not apply to a conviction for conspiracy to commit murder. The court also noted that "it does not look like the felony murder rule was involved or natural probable consequences rule was involved in Mr. Brown's conviction." Accordingly, the court denied Brown's petition on the ground that he did not state a prima facie case for relief under section 1170.95.

## DISCUSSION

Brown contends the trial court erred by denying his petition because (1) section 1170.95 applies to a defendant who was convicted of attempted murder and/or conspiracy to commit murder based on the natural-and-probable consequences doctrine, and (2) Brown's 1995 convictions for these crimes may have been based on the natural-and-probable consequences doctrine. Putting aside the fact that Brown's petition did not seek to vacate his attempted murder conviction, we reject both prongs of this appellate argument.

6

## I. Section 1170.95 Applies to Murder Convictions

First, we conclude that Brown is ineligible for relief under section 1170.95 because he was convicted, not of committing murder, but of attempting and conspiring to do so. The language of section 1170.95 applies only to convictions for "felony murder or murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).) Section 1170.95 does not, on its face, reach the crimes of attempted murder or conspiracy to commit murder.

Brown argues that section 1170.95 must be read as applying to attempted murder in order to effectuate legislative intent. This argument has been repeatedly rejected by the appellate courts. To the extent Brown claims otherwise, he conflates two distinct legal issues.

There is a split of authority as to whether Senate Bill 1437 abrogates the natural-and-probable consequences doctrine as a theory of establishing accomplice liability for attempted murder. (Compare *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103–1107 (*Lopez*), review granted Nov. 13, 2019, S258175, with *People v. Larios* (2019) 42 Cal.App.5th 956, 969–970 (*Larios*), review granted Feb. 26, 2020, S259983.)

Courts following *Lopez* conclude that the Legislature did not intend for Senate Bill 1437 to affect convictions for attempted murder, as evidenced by unambiguous language in section 188(a)(3) and the senate bill as well as the pertinent legislative history. (*Lopez, supra,* 38 Cal.App.5th at pp. 1104–1105; *People v. Munoz* (2019) 39 Cal.App.5th 738, 753–760 (*Munoz*), review granted Nov. 26, 2019, S258234; *People v. Dennis* (2020) 47 Cal.App.5th 838, 844–847 (*Dennis*), review granted July 29, 2020, S262184; see also *Alaybue, supra,* 51 Cal.App.5th at p. 222.)

A different view, expressed by the Fifth District Court of Appeal, concludes that the amended definition of malice in section 188(a)(3) must be read to apply to the crime of attempted murder because malice aforethought is an element of both murder and attempted murder. (*Larios, supra,* 42 Cal.App.5th at p. 964–968; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1013–1016 (*Medrano*), review granted March 11, 2020, S259948; *People v. Sanchez* (2020) 46 Cal.App.5th 637, 642–644 (*Sanchez*), review granted June 10, 2020, S261768.) According to these cases, amended section 188 is an ameliorative change to the criminal law applicable to defendants whose attempted murder convictions are not yet final. (*Ibid*.)

Notwithstanding their conflicting holdings regarding the application of Senate Bill 1437, both lines of authority agree that section 1170.95's resentencing procedure is not available to people previously convicted of attempted murder whose convictions are now final. (*Lopez*, *supra,* 38 Cal.App.5th at pp. 1104–1105; *Munoz, supra,* 39 Cal.App.5th at p.754; *Dennis, supra*, 47 Cal.App.5th at p. 845–846; *Alaybue, supra,* 51 Cal.App.5th at p. 223; *Larios, supra,* 42 Cal.App.5th at pp. 968–970; *Medrano*, 42 Cal.App.5th at pp. 1016–1018.) Indeed, the *Lopez* court found that the language of section 1170.95 "underscored" the Legislature's "intent to exclude attempted murder from the ambit of the Senate Bill 1437 reform," as section 1170.95 refers repeatedly to a petitioner's " 'murder conviction.' " (*Lopez*, at pp. 1104–1105.) Despite the Fifth District's different interpretation of other aspects of Senate Bill 1437, its *Larios* line of authority agrees with *Lopez* that unambiguous language in section 1170.95, subdivision (a) limits application of this resentencing statute to convictions for " 'felony murder or murder under a natural and probable consequences theory.' " (*Larios,* at p. 969 [quoting § 1170.95, subd. (a)].) *Larios* also quotes with approval the *Lopez*

court's explanation of " 'sound policy reasons' " that may have caused the Legislature to limit section 1170.95 only to murder cases. (*Larios,* at p. 969.)

Brown urges us to depart from this general consensus. He contends that the Fifth District cases are correct to the extent they hold that the definition of malice aforethought in amended section 188(a)(3) necessarily applies to attempted murder and, by extension, to conspiracy to murder. And, according to Brown, the same analysis of Senate Bill 1437 that allegedly compels this conclusion also requires that section 1170.95 be construed to apply to people serving a prison sentence for attempted murder or for conspiracy to commit murder. We are not persuaded.

As a preliminary matter, we disagree with Brown that attempted murder and conspiracy to murder are indistinguishable for purposes of implementing Senate Bill 1437. The natural-and-probable consequences doctrine operates differently in conspiracy cases than in attempted murder cases. When a defendant is charged with conspiracy to commit murder, the target offense of the conspiracy is murder and, therefore, proof of an intent to kill is required to support a conviction for this crime. (*People v. Swain* (1996) 12 Cal.4th 593, 599–601.) Only where the target offense is something other than murder is the natural-and-probable consequences doctrine implicated. A conspirator whose target crime is, for example, robbery or assault, may be convicted of murder based on a natural-and-probable consequences theory because he or she "is criminally responsible for the acts of fellow conspirators committed in furtherance of, and which follow as a natural and probable consequence of, the conspiracy." (*People v. Guillen* (2014) 227 Cal.App.4th 934, 998.) However, in that situation an actual murder occurs and the amended definition of malice in section 188(a)(3) squarely applies.

9

In any event, the question presented by this appeal is how to apply section 1170.95. The consensus view that section 1170.95 is limited to discrete categories of murder convictions and that it excludes all other convictions is consistent with the statutory language and is supported by legitimate reasons for limiting this relief to certain murders, rather than including attempt crimes that are not as severely punished. (See *Alaybue, supra*, 51 Cal.App.5th at p. 225.) To the extent the law is less established with regard to a conviction for conspiracy to commit murder, we need not come to rest on this point since the facts in this case establish that Brown was not convicted on a natural-and-probable consequences theory, the subject to which we now turn.

## II. Brown Was Not Convicted Under the Natural-And-Probable Consequences Doctrine

Even if section 1170.95 could apply to Brown's crimes, the record does not support Brown's factual claim that his convictions for conspiracy and attempted murder may have been based on the natural-and-probable consequences doctrine.

"[C]onspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, [i.e.], the object of the conspiracy." (*People v. Swain, supra*, 12 Cal.4th at p. 602.) Here, Brown was charged with and convicted of conspiracy to commit first degree murder. On the verdict forms, the jury made an express finding that Brown conspired to commit murder and that his target offense was murder in the first degree. They specifically found, as one of the overt acts in furtherance of this conspiracy, that between January 7 and February 7, 1995, Brown encouraged Fain and Diggs to murder Williams. Thus, the jury necessarily found that Brown himself acted with malice aforethought.

10

Brown contends that the jury may have relied on the natural-and-probable consequences doctrine to impute to him the malice of one of Brown's coconspirators. As evidence of this, Brown relies on the fact that the jury was instructed with CALJIC No. 6.11, which states that a member of a conspiracy is guilty of not just the crime that the conspirators have agreed to commit "but is also liable for the natural and probable consequences of any crime or act of a coconspirator to further the object of the conspiracy, even though such crime or act was not intended as a part of the original plan . . ." In presenting this argument, Brown ignores that the target offense of his conspiracy was first degree murder. Brown was not accused of having conspired to commit some lesser offense and then convicted of murder based on his status as a member of this lesser conspiracy. Thus, his conviction for conspiracy to murder could not have been based on the natural-and-probable consequences doctrine. (See e.g. *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 645.)

Nor do we find any indication that Brown's attempted murder conviction was based on a natural-and-probable consequences theory of imputed mens rea. The jury instructions pertaining specifically to the attempted murder charge made no reference to this doctrine. Nor was Brown accused of attempting or intending to commit any crime other than murder. (Compare e.g. *People v. Favor* (2012) 54 Cal.4th 868 [attempted murders were natural and probable consequence of target robbery offenses].) Nevertheless, Brown argues the jury may have imputed a codefendant's malice onto him because he was prosecuted for attempted murder under an aider and abettor theory. This argument is unsound.

As the jury was instructed, attempted murder is a specific intent crime; it requires the specific intent to kill and the commission of a direct but

11

ineffectual act toward that end.  (See *People v. Lee* (2003) 31 Cal.4th 613, 623.)  The jury was also instructed that a person who aids and abets the commission of a crime acts "with knowledge of the unlawful purpose of the perpetrator and . . . .  [¶] . . . with the intent or purpose of committing, encouraging, or facilitating the commission of the crime."  Thus, if Brown's attempted murder conviction was based on an aider and abettor theory, the jury must have found that he had the intent to kill.  (See *Lee*, at p. 624.)

Brown argues the jury may have been confused or misled to believe that a codefendant's malice could be imputed to him because the jury was instructed with CALJIC former No. 3.00, which has been disapproved.  The version of CALJIC former No. 3.00 that was used at Brown's trial states that persons "who are regarded as principals in the crime," and are considered "equally guilty thereof," include those who "directly and actively commit or attempt to commit the act constituting the crime" and those who "aid and abet the commission or attempted commission of the crime."  Brown posits that CALJIC former No. 3.00 is confusing and that it may have misled the jury to think that an aider and abettor and a direct perpetrator are always "equally guilty."

Our State Supreme Court has found that CALJIC former No. 3.00 is a correct statement of the law, but the instruction "could be misleading in a case in which the principals might be guilty of different crimes and the jury believes the instruction prevents such a verdict."  (*People v. Johnson* (2016) 62 Cal.4th 600, 640.)  For example, in *People v. Nero* (2010) 181 Cal.App.4th 504, 518, the jury in a murder case involving multiple defendants asked whether it could find an aider and abettor defendant guilty of a greater or lesser degree of murder than her codefendant who was the actual killer.  The trial court's only response was to re-read CALJIC former No. 3.00, which

12

could have misled the jury to conclude that it could not find the aider and abettor defendant guilty of a lesser degree of murder than her codefendant. (*Ibid.*; See *Johnson*, at p. 641.)

Here, the record does not support Brown's contention that his jury may have been misled by CALJIC former No. 3.00. Brown cites no evidence suggesting that his mental state was less culpable than that of his codefendants. Moreover, in convicting Brown of conspiracy to murder, the jury made an express finding that Brown "did encourage [Fain and Diggs] to murder Robin Williams." Ignoring these facts, Brown intimates that this case is like *People v. Nero*, *supra*, 181 Cal.App.4th 504 because the jury asked a question during deliberations, which led the court to re-read CALJIC former No. 3.00. We are not persuaded by this argument, which fails to consider the substance of the jury's question. The jury asked whether a conspirator had to be present at the scene of the crime to be convicted of attempted murder. This question had nothing to do with the mental culpability of an aider and abettor. Instead, the jury was grappling with evidence suggesting that Brown was not present when Williams was shot. It was this circumstance that explains why Brown was prosecuted as an aider and abettor. The prosecution theory at trial was that Brown had the motive and intent to kill Williams, and the jury specifically found that he encouraged Fain and Diggs to commit the murder.

Finally, Brown contends that this court's 1998 opinion in *Brown I* demonstrates that the natural-and-probable consequences doctrine was involved in his convictions. *Brown I* addressed several issues specific to each codefendant and found, among other things, that substantial evidence supports Brown's convictions. The analysis of Brown's attempted murder conviction includes a general discussion of principles governing aider and

13

abettor liability, but it does not establish that the natural-and-probable consequences doctrine played a role in Brown's convictions. Indeed, *Brown I* concludes its recitation of the substantial evidence supporting Brown's conviction for attempted murder with the observation that the jury could reasonably have inferred Brown "advised or encouraged the attempt to murder Williams," which would have made him a direct aider and abettor of this crime.

## DISPOSITION

The judgment is affirmed.

_____
TUCHER, J.

WE CONCUR:


_____
POLLAK, P. J.


_____
STREETER, J.

*People v. Brown* (A157170)

15